MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

ANDREW P. CAPUTO (CABN 203655)
NATALIE LEE (CABN 277362)
Assistant United States Attorneys
    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    E-Mail: andrew.caputo@usdoj.gov
    E-Mail: natalie.lee2@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11-0879 SI |
| Plaintiff, | UNITED STATES'S TRIAL MEMORANDUM |
| v. | |
| DEBORAH JEAN MADDEN, | Date: Tuesday, September 11, 2012<br>Time: 3:30 p.m. |
| Defendant. | |

The United States respectfully files its trial memorandum in this matter.

I.   <u>The Charged Crime.</u>

Defendant Deborah Jean Madden is charged with a single count of acquiring or obtaining possession of cocaine by misrepresentation, fraud, forgery, deception, or subterfuge, in violation of 21 U.S.C. § 843(a)(3). There are three elements to this crime. First, the defendant must have acquired or obtained possession of cocaine. Second, the defendant must have done so by misrepresentation, fraud, forgery, deception, or subterfuge. Third, the defendant must have done so knowingly or intentionally.

II.     Evidence in Support of the Charge.

Defendant worked as a criminalist in the narcotics unit of the San Francisco Police Department's ("SFPD's") Criminalistics Laboratory ("crime lab").  Her duties focused on identifying and weighing suspected controlled substances.

In November 2009 there were three criminalists working in the crime lab's narcotics unit: defendant, Tasha Smith, and Lois Woodworth, the unit's supervisor.  Each criminalist had an individual evidence storage locker, which she used to store narcotics evidence that had not yet completed the testing and review process.  Keys for the lockers were kept in a keybox to which each of the criminalists had access.  On the morning of November 24, 2009, Ms. Smith arrived at work, opened her evidence locker, and discovered that the evidence envelopes in the locker had been disturbed.  She reported the disturbance to Ms. Woodworth, who said she had not been in Ms. Smith's locker.  Ms. Woodworth directed Ms. Smith to ask defendant whether she had entered Ms. Smith's locker.  When Ms. Smith left the crime lab at the end of the previous workday, defendant was the only person physically present in the narcotics unit.  At around this time, defendant had begun working late on many days without putting in for overtime.

When approached by Ms. Smith, defendant denied entering Ms. Smith's locker.  Ms. Smith reported defendant's denial to Ms. Woodworth, who began preparing an investigation into the matter.  At this point defendant reversed her original denial and admitted entering Ms. Smith's locker, claiming implausibly that she had done so in order to retrieve a lab report contained in one of the evidence envelopes in the locker.  Ms. Woodworth pointed out to defendant the illogic of this explanation, since copies of lab reports were readily available elsewhere in the crime lab.  Defendant claimed she had been unable to find the copy of the report at the other location.  She said she had really needed the report and thus had entered Ms. Smith's evidence locker to find it.  Ms. Woodworth told defendant that she would write up defendant for this violation of laboratory procedures.

On December 16, 2009, about three weeks after the incident with Ms. Smith's evidence locker, Ms. Woodworth received a phone call from defendant's sister, Veronica Grossi.  Ms. Grossi told Ms. Woodworth that defendant had been admitted at a substance-abuse rehabilitation

center ("rehab center") because defendant had been abusing alcohol.  While preparing to drive defendant to the rehab center, Ms. Grossi said she had discovered in defendant's bedroom a vial containing white powder, which she delivered to the rehab center.

The combination of defendant's suspicious entry into Ms. Smith's evidence locker and Ms. Grossi's report of finding a vial of white powder in defendant's bedroom caused Ms. Woodworth to suspect that defendant might be embezzling cocaine from the lab.  Ms. Woodworth responded by reviewing evidence envelopes containing cocaine that had been in the narcotics unit in recent months and re-weighing drug evidence from envelopes that seemed suspicious – for example, because the evidence envelopes bore evidence of having been stapled shut multiple times or had been held in the narcotics unit for an unusual length of time.  These reweighs revealed that the amount of powder cocaine contained in several of the evidence envelopes was meaningfully less than the amount specified in the lab report prepared by the relevant criminalist.  At the request of SFPD investigators, laboratories of the California Department of Justice ("Cal DOJ") subsequently reweighed the contents of the same evidence envelopes that Ms. Woodworth had reweighed, as well as dozens of additional evidence envelopes that had been in the SFPD crime lab at around this same time.  The Cal DOJ reweighs confirmed the results of Ms. Woodworth's reweighs and identified additional evidence envelopes that contained significantly less cocaine than specified in the original SFPD lab reports.

SFPD Internal Affairs investigators then interviewed defendant in February 2010.  She confessed to taking cocaine from the crime lab.  In an apparent effort to explain or excuse her culpability, defendant claimed that she took only small amounts of cocaine from the crime lab and only a few occasions; that she only took cocaine that had spilled during the narcotics testing process; and that she began using cocaine in an effort to address her alcoholism.  Investigators subsequently obtained and executed a state warrant to search defendant's home in San Mateo. The searching officers found 0.09 grams of cocaine in Madden's bedroom, wrapped in a waxy paper consistent with the type of weighing paper used in the crime lab.

III. <u>Evidentiary, Procedural, and Other Anticipated Legal Issues.</u>

    A. <u>Disclosure and Discovery.</u>

The United States has provided defendant with extensive discovery, including expert disclosures for the expert witnesses it intends to call. As new reports and information are received, the government will provide them in timely fashion to the defense.

In response to our requests for reciprocal discovery, defendant's counsel has represented that the defense intends to call no witnesses at trial and therefore will provide no reciprocal discovery. The United States is relying on this representation.

At the pretrial conference, the United States will ask the Court's permission to disclose to the defense in advance of trial the transcripts of witness testimony that occurred before the grand jury.

The government has made written requests for impeachment information to the government agencies that employ its law enforcement witnesses. To date it has received no material impeachment information in response to these requests. If it receives material impeachment information prior to trial, the government will disclose it to the defense. In response to a subpoena for impeachment information about SFPD employees served on the San Francisco Police Commission's Office of Citizen Complaints ("OCC") by the United States, OCC recently produced documents to the Court rather than to the government. OCC further provided the Court with the text of a proposed protective order that it asked the Court to enter prior to disclosing the documents. If the Court elects to disclose the OCC documents to both parties, the government recommends that it enter the more straightforward protective order that is attached to the Court's General Order 69. If the Court discloses the OCC documents to the defense in advance of trial, we note that General Order 69 requires defendant to move <u>in limine</u> in advance of trial to introduce any records that defendant believes are admissible.

    B. <u>Stipulations</u>

The United States has approached the defense about attempting to enter into stipulations in advance of trial. The defense has indicated its preference not to enter into any such stipulations.

| | | |
|---|---|---|
| 1 | DATED: September 6, 2012 | Respectfully submitted, |
| 2 | | MELINDA HAAG |
| 3 | | United States Attorney |
| 4 | | _____/s/_____ |
| | | ANDREW P. CAPUTO |
| | | NATALIE LEE |
| 5 | | Assistant United States Attorneys |