PAUL F. DeMEESTER (CA SBN 148578)
Attorney at Law
1766A – 18th Street
San Francisco, California 94107
415.305.7280
415.861.2695 (fax)
e-mail: paulfdemeester@msn.com

Attorney for Defendant DEBORAH JEAN MADDEN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11-0879-SI |
| Plaintiff, | **Defendant's Renewed Rule 29 Motion** |
| vs. | |
| DEBORAH JEAN MADDEN, | |
| Defendant. | |

### DEFENDANT'S RENEWED RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL

Defendant DEBORAH JEAN MADDEN, renews her motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Ms. Madden initially moved for a judgment of acquittal pursuant to rule 29 at the close of the Government's case on Thursday, September 27, 2012. The motion was denied.

A mistrial was declared and the jury discharged on Wednesday, October 3, 2012. Rule 29 permits the motion for a judgment of acquittal to be renewed within 14 days after the Court has discharged the jury.  Hence, this renewed motion is timely.

At the argument on the initial defense motion, Ms. Madden relied upon the case of *United States v. Wilbur*, 58 F.3d 1291 (8th Cir.1995) in support of her motion.  The Government labeled the case an "outlier."  The Government was mistaken. Mathematically, an "outlier" is "a statistical observation that is markedly different in value from the others of the sample."  www.merriam-webster.com/dictionary/outlier.  But given the paucity of appellate cases on the charged offense, to draw any statistical conclusions from any of the cases is statistically impermissible.

Moreover, cases where sufficient evidence of the charged offense is lacking may not reach the appellate stage in the first place: they may not be filed; favorable dispositions may be reached; juries may not convict; or trial courts may grant Rule 29 motions.  It is therefore to be expected that most cases involving sufficiency of evidence claims regarding a 21 USC 843(a)(3) offense, will indeed involve an abundance of evidence justifying the contested conviction(s).

Still, the defense was able to find two reported cases wherein federal appellate courts reversed 21 USC 843(a)(3) convictions based on insufficiency of evidence: *Wilbur, supra*, and *United States v. Bass*, 490 F.2d 846 (5th Cir.1974), overruled on other grounds in *United States v. Lyons*, 731 F.2d 243, 246 (5th Cir.1984).

Seven reported cases were found that resolved insufficiency of evidence claims in favor of conviction on the 21 USC 843(a)(3) charge. Ms. Madden has no qualms with any of these holdings. The facts of these cases are readily distinguishable from hers.

In *United States v. McElwee*, 646 F.3d 328 (5th Cir.2011), the defendant, the wife of a medical doctor who employed her as a nurse practicioner, had at least ten times signed for hydrocodone prescriptions that were inconsistent with her own medical charts; had altered and falsified an exam note; had told one codefendant to "slow down" the number of prescriptions being submitted to local pharmacies after she had been alerted to suspicious prescriptions coming from her workplace; and had told a codefendant that another employee would save their behind with a falsified dispensary log book. *Id.*, at 335, 340.

In *United States v. Wells*, 211 F.3d 988 (6th Cir.2000), there was evidence that a codefendant was in possession of several of Dr. Wells' prescription pads and individual prescriptions from the good doctor; one of the persons in whose name the prescription was written testified that she never received such prescription and did not even know Dr. Wells; another witness for whom controlled substances were prescribed was never a patient of Dr. Wells. *Id.*, at 1001.

In *United States v. Neville*, 82 F.3d 750 (7th Cir.1996), a government expert testified that a doctor's patient files did not contain adequate justification for a Dilaudid (a painkiller) prescription; some files actually contained information that the particular medication was improper. These patients were associated with a person who went to

great lengths to obtain the controlled substance, only to resell them after obtaining the drugs. *Id.*, at 753, 759.

In *United States v. Neighbors*, 23 F.3d 306 (10th Cir.1994), the chief pharmacist and only full-time pharmacist, ordered plenty of Dilaudid and Valium that he converted to his own use. The Government showed that several audits revealed that the drugs in question had been delivered to the defendant's pharmacy far in excess of what that pharmacy had dispensed or had "on hand" when the defendant quit his pharmacy job. The figures were dramatic. In fifteen months, the pharmacy had received 6,500 Dilaudid tablets and over 135,000 Valium tablets from its wholesale supplier. Yet, during that time period, the pharmacy records showed that *no* prescriptions for Dilaudid had been filled whatsoever and that a generic equivalent of Valium had been used to fill the very few Valium prescriptions. Two wholesale supplier employees testified that the defendant would often personally pick up the drug orders. The three part-time pharmacists who were the only pharmacist employees besides the defendant, testified that during the relevant time period, the pharmacy never kept a stock supply of either Valium or Dilaudid tablets. None of the three neither saw a Dilaudid prescription nor ordered either medication from the wholesale supplier. The defendant had told federal agents that three named physicians could verify the Dilaudid prescriptions. All three doctors were called as witnesses at trial and denied the claim. In affirming the convictions, the circuit court called the evidence "most convincing." *Id.*, at 308-310.

In *United States v. Beasley*, 809 F. 2d 1273 (7th Cir.1987), a medical doctor aided a chemistry researcher's experiments by writing prescriptions for controlled substances

by the thousands in the name of the researcher or his assistants. The so-called assistants were actually a convicted drug dealer and his daughter. The researcher had lied to the doctor about his relationship to these two individuals and about the use of the drugs. The drug dealer testified that he gave some of the drugs away and sold the rest. *Id.*, at 1274-1275.

In *United States v. Galyen*, 798 F.2d 331 (8th Cir.1986), an amputee obtained Dilaudid prescriptions from his physician who was unaware that his patient was also obtaining the same prescriptions from other doctors, prescriptions that the patient-defendant got filled by driving extra miles to various pharmacies in different towns. Had the doctor known that, he would not have prescribed his patient the painkiller. In a period of less than three months, the defendant had obtained 413 prescriptions for a total of 11,277 Dilaudin tablets. A drug enforcement agent testified that when he met the defendant to negotiate a marijuana transaction, the defendant asked the undercover agent if he was interested in buying Dialudid and showed the agent a tablet. The agent further noticed that the defendant was carrying a gun. *Id.*, at 332-333.

In *United States v. Devous*, 764 F.2d 1349 (10th Cir.1985), the defendant, a medical practitioner, became romantically involved with his assistant. The lovebirds started using Demerol for recreational purposes. In a period spanning less than three months, the doctor had written prescriptions for office use of some 200 bottles of Demerol, more than the entire supply of Demerol used by the local hospital. Confronted by his state's Board of Medical Examiners with the unusual quantity, the defendant ordered 40 more Demerol bottles from another pharmacy under the guise of needing the

medication because a visiting physician would need it to engage in some gastroentology procedures.  The supposed visitor testified at trial and contradicted the defendant's claim.  The defendant sent his paramour/assistant to the pharmacy to obtain the Demerol bottles, ordered her to pour them into an "IV" bag and then refilled the bottles with an "IV" solution.  The defendant then took the bottles to the police station to have them destroyed and requested a police report of the action that he could then take to the Board of Medical Examiners.  Subsequently, he called police to report that his assistant was a drug user and was using his DEA forms to acquire the drugs.  Not surprisingly, the assistant obtained immunity and testified against her former lover.  *Id.*, at 1351, 1356.

      At the argument on Ms. Madden's Rule 29 motion on September 27, 2012, Government counsel cited six cases.  One of those was *Wilbur, supra*, the so-called "outlier."  Out of the other five cases, only one was a case involving a sufficiency of evidence claim, the above-cited *Neighbors* case.  Two of the cases involved sentencing issues only.  *United States v. Fronk*, 606 F.3d 452 (8th Cir.2010) and *United States v. Stella*, 591 F.3d 23 (1st Cir.2009).  One case involved a Fourth Amendment search and seizure issue.  *United States v. Leichtling*, 684 F.2d 553 (8th Cir.1982).  The last case mentioned by counsel, a Ninth Circuit case, did go to trial but the two-page opinion only dealt with appellate claims other than the sufficiency of the evidence, such as the impeachment of the defendant, the trustworthiness of that impeachment evidence, the propriety of the jury instructions, and the admission of evidence about drug record-keeping requirements.  *Unites States v. Palmer*, 691 F.2d 921 (9th Cir.1982).

At the September 27, 2012 argument, Government counsel - in order to accentuate the "outlier" status of *Wilbur* - stressed that the Eighth Circuit Court of Appeals had not even cited *Wilbur* in its subsequent *Fronk* opinion involving 21 USC 843(a)(3) [see above]. An examination of the Eighth Circuit's *Fronk* decision reveals that the case involved but one issue on appeal: the propriety of the trial court's denial of an offense-level sentence reduction for acceptance of responsibility. All eight cases cited in *Fronk* were sentencing decisions. *Fronk* did not involve any issue of the insufficiency of evidence on a 21 USC 843(a)(3) charge. It should come as no surprise that *Wilbur* was not mentioned.

The United States Supreme Court warned against the type of argument Government counsel made at the September 27 hearing: "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedent." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

There is an *outlier* in this case but it isn't *Wilbur*. It's the Government's prosecution of Ms. Madden on an unavailing charge. The renewed Rule 29 motion should be granted.

DATED: October 17, 2012.

                                        Respectfully submitted,

                                        _____/s/_____
                                        PAUL F. DeMEESTER
                                        Attorney for Ms. Deborah Jean Madden

Defendant's Renewed Rule 29 Motion CR 11-0879-SI